UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512<br><br>Request from Switzerland for Assistance in a Criminal Matter: Jeffery Crooney | MISC. NO. ____ |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this ex parte application for an Order, pursuant to 18 U.S.C. §3512, appointing the undersigned attorney, Lisa Hirsch, a Trial Attorney with the Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute a request for assistance in a criminal matter from the Swiss Confederation ("Switzerland"). In support of this application, the United States asserts:

RELEVANT FACTS

1. On December 22, 2016, the Swiss Federal Office of Justice submitted a request for assistance (hereinafter, the "Request") to the United States, pursuant to the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters,

U.S.-Switz., May 25, 1973, 27 U.S.T. 2019 (hereinafter, the "Treaty"). As stated in the Request, the Public Prosecutor's Office in the Canton of St. Gallen is investigating two criminal offenses, fraud and forgery, which occurred between in or about May and October 2016, in violation of the criminal law of Switzerland, specifically, Articles 146 and 251 of the Swiss Criminal Code. A copy of the applicable law and the penalty provisions are included as Attachment A to this application. Under the Treaty, the United States is obligated to render assistance in response to the Request.

2. According to authorities in Switzerland, in May 2016, a woman who resides in Switzerland (hereinafter, the "Victim") began communicating with a person who identified himself as Jeffery Crooney (hereinafter, "Crooney") on an internet dating site – specifically, "swissfriends.ch." Crooney represented, inter alia, that he was in the U.S. Army in Iraq, that he was scheduled to retire in or about August 2016, and that he and his late wife had purchased a pineapple and poultry farm in Ghana.

3. During the next few months, the Victim and Crooney communicated online. While doing so, Crooney told the Victim that he loved her and that he wanted to move in with her when he retired. He also sent the Victim photographs of his purported farm and told her that he had hired a man, Mohammed Osumanu (hereinafter, "Osumanu"), to manage the farm, but that he was unable to contact Osumanu because the U.S. government had "cut the connection."

4. In early June 2016, Crooney asked the Victim to contact Osumanu. The Victim did so and Osumanu told her that he needed $7,000 to purchase pesticides. The Victim passed this information on to Crooney. Crooney asked the Victim to send the money to Osumanu because he was unable do so and the Victim asked Crooney to provide a copy of his passport, his driver's

license, and evidence that the farm belonged to him. At this point, Crooney provided a copy of (1) his purported passport and driver's license, and (2) a purported certificate authorizing him and his late wife to operate the farm. Accordingly, in mid-June 2016, the Victim, as directed, transferred $7,000 to account number XXXXXX3703, held by Global Telecom LLC, at PNC Bank, N.A., in Pittsburgh, Pennsylvania. Within a few days, Osumanu confirmed receipt of the funds.

5. Three days later, Osumanu told the Victim that he needed $45,000 for other supplies. The Victim passed this information on to Crooney. Crooney asked the Victim to send these funds to Osumanu as well and assured her that he would see her in late July. Shortly thereafter, the Victim transferred the funds to the same PNC Bank account. Within a few days, Osumanu confirmed receipt of the funds.

6. Between in or about late July 2016 and mid-October 2016, Osumanu told the Victim that he needed an additional $152,200 to pay workers and purchase machines. The Victim agreed to transfer the funds, and, as directed, transferred $72,400 to account number XXXXXX8861, held by Evans Sarfo Adu, at PNC Bank, N.A., in Columbus, Ohio, and $78,000 to various accounts in China.

7. In the meantime, Crooney informed the victim that he had to delay his trip to Switzerland and asked her whether he could send his personal belongings, including a package of cash and gold bars, to her. The Victim told Crooney that he could do so. Thereafter, in early September, a purported delivery service contacted the Victim, told her that a package addressed to her contained "huge sums of money and . . . valuable things," and that the company needed to obtain a "Clearance Certificate and Export Permit Declaration," which would cost £99,200

(approximately $ 123,312). After discussing various issues with Crooney, the Victim transferred the funds, and other purported fees, totaling more than £1 million, to various U.K. bank accounts. Shortly thereafter, the Victim saw a German television program regarding a "scam" involving an American soldier in Syria, money, and gold, and concluded that she had been "scammed." In early November 2016, the Victim filed a criminal complaint.

8. Swiss authorities conducted an investigation. During the investigation, Swiss authorities interviewed the Victim. The Victim related the foregoing facts and provided copies of (1) e-mail messages and other electronic communications between her, Crooney, and Osumanu, (2) copies of photographs of the purported farm in Ghana, (3) a purported copy of Crooney's passport and driver's license, and (4) various purported invoices and certificates that Crooney, Osumanu, and/or their associates provided.

9. To further the investigation, Swiss authorities have asked U.S. authorities to (1) provide bank records pertaining to the PNC Bank accounts to which the victim had transferred her funds – specifically, account number XXXXX3703, held by Global Telecom LLC, and account number XXXXX8861, held by Evans Sarfo Adu, and (2) interview the account holders if they reside in the United States.

## LEGAL BACKGROUND

### The Treaty

10. A treaty constitutes the law of the land. U.S. Const. art. VI, cl.2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). To the extent that the provisions of a

treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

11. The Treaty obligates the United States and Switzerland, upon request, to provide assistance to the other in criminal investigations and court proceedings, including assistance in serving documents, locating witnesses, and obtaining testimony, statements and records. Article 1. In addition, the Treaty, like 18 U.S.C. §3512, authorizes federal courts to assist in the execution of such requests. Article 9(3) ("The appropriate judicial officers and other officials in each of the two States shall, by all legal means within their power, assist in the execution of requests from the other State"). Finally, the Treaty, like §3512, also authorizes federal courts to use compulsory measures to further the execution of such requests. Article 31(3) ("The court . . . to which a request is transmitted . . . shall, when necessary, issue a procedural document in accordance with its own procedural law to require the attendance and statement or testimony of persons, or the production or preservation of documents, records or articles of evidence").

18 U.S.C. § 3512

12. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

* * *

> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> * * *
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

13. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[1] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders which are necessary to execute a foreign request.

14. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs, Criminal Division, U.S. Department of Justice,

---

[1] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. §1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[2] Upon such a duly authorized application, Section 3512 authorizes a federal judge[3] to issue "such orders as may be necessary to execute [the] request," including (1) search warrants under Fed. R. Crim. P. 41, (2) orders for electronic records under 18 U.S.C. § 2703, (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123, and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)-(b)(1). In addition, a federal judge may prescribe any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. See In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989) (court has discretion in prescribing procedures to be followed in executing foreign request under 28 U.S.C. § 1782); cf. White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (court may issue process necessary to facilitate disposition of matter before it); Fed. R. Crim. P. 57(b).

15. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents or other things to (1) issue an order requiring a person to appear and/or produce documents or other things, (2) administer any necessary oaths,

---

[2] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B.

[3] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including magistrate judges in the definition of federal judge).

(3) take testimony or statements, and (4) take receipt of documents or other things. 18 U.S.C. §3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner Subpoena." Any such subpoena or any other order, subject to subsection d, may be served or executed anywhere in the United States. 18 U.S.C. §3512(f). A copy of a "Commissioner Subpoena" is included as Attachment B.

## REQUEST FOR ORDER

16. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," i.e., the Swiss Federal Office of Justice, the designated Central Authority in Switzerland for requests made pursuant to the Treaty, and seeks assistance in the investigation of two criminal offenses -- fraud and forgery. Furthermore, the requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records and witness interviews, falls squarely within that contemplated by both the Treaty and Section 3512. Finally, this application was properly filed in the District of Columbia.

17. This application is being made ex parte, consistent with the United States' practice in its domestic criminal matters. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in

execution of a treaty request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person other than the recipient(s) of the commissioner subpoena(s).[4]

18. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. §3512, appointing the undersigned attorney, Lisa Hirsch, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the

[4] Swiss authorities have not asked U.S. authorities to keep the Request confidential. Accordingly, the United States is not seeking authorization to issue a non-disclosure order or an order to seal the court file.

actions necessary, including the issuance of a commissioner subpoena(s), to obtain the evidence requested in a form consistent with the intended use thereof.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: ______________________
Mary E. McLaren
Trial Attorney
Maryland Bar
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C. 20530
(202) 514-0040 telephone
(202) 514-0080 facsimile
Mary.McLaren@usdoj.gov

By: ______________________
Lisa Hirsch
Trial Attorney
Florida Bar No. 0691186
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 900
Washington, D.C. 20530
(202) 305-2791 telephone
(202) 514-0080 facsimile
Lisa.Hirsch2@usdoj.gov